878 F.2d 1437
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Delores WILBER, Plaintiff-Appellant,
v.
TRANSPORT INSURANCE CO., Defendant-Appellee,
American International Group, Inc., et al., Defendants.
 No. 88-3904.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 Before ENGEL, Chief Judge, BOGGS, Circuit Judge, and BENJAMIN F. GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Delores Wilber appeals the trial court's grant of defendant Transport Insurance Co.'s (Transport) motion for summary judgment, as well as the court's denial of her own motion for summary judgment, in this wrongful death suit brought under the diversity jurisdiction. Because we conclude that the insurance policies held by Wilber's husband did not cover the accident in question, we affirm.
 
 
 2
 * Wilber sued Transport for damages arising from the death of her husband in a highway accident. The accident took place on June 26, 1985 in Bedford County, Pennsylvania. Robert Wilber, a trucker for National Van Lines, was transporting a load of furniture from Washington, D.C. to Texas in a tractor-trailer. Another tractor-trailer, travelling in the opposite direction, discharged several pieces of metal onto the highway from its brakedrum. A third tractor-trailer, following behind the discharging trailer, struck the debris. The metal pieces were propelled into Wilber's cab, striking him in the head and killing him instantly. The trailer that discharged the pieces never stopped and has never been identified. (The trailer that struck the pieces did stop.)
 
 
 3
 Wilber, as an incident to his employment with National, carried various types of insurance. Transport issued three policies relevant to the accident: (1) a standard occupational comprehensive liability and physical damage policy, with a limit of $15,000 per occurrence (the "primary policy"); (2) an excess liability policy that covered occurrences over $15,000, with a limit of $985,000 per occurrence; and (3) another excess liability policy covering occurrences over $1,000,000, with a limit of $4,000,000 per occurrence. None of these policies contained an express provision extending coverage to accidents involving an uninsured motorist. It is undisputed that the primary policy contained an express waiver of such coverage.
 
 
 4
 Wilber filed suit in January 1986 against Transport and five other defendants seeking compensatory and punitive damages, attorney's fees, and costs. Wilber alleged that Transport willfully, and in bad faith, failed to meet its obligations to her under the insurance contract. After the claims against the other defendants were resolved pursuant to an agreed judgment entry, both Transport and Wilber filed for summary judgment on the issues concerning the Transport policy. In August 1988, the court found for Transport. This appeal followed.
 
 II
 
 5
 This central issue of this case can be easily summarized. Wilber argues that Ohio law requires insurers to provide coverage in automobile insurance policies for accidents caused by uninsured motorists and that this coverage extends to accidents caused by unidentified motorists such as the trucker whose lost brakedrum led to the death of Mr. Wilber.[1] The primary policy, as is allowed under Ohio law, expressly excludes such coverage, but the excess policies do not. Wilber contends that such coverage is therefore implied in the contract by operation of law.
 
 
 6
 In response to this argument, Transport contends that, even if the excess policies provide the coverage the plaintiff claims, the excess liability policies never came into effect because the coverage of the primary policy was not paid off. The first excess policy, under its terms, does not come into play until the plaintiff receives $15,000 in damages from the primary policy.[2] The plaintiff, however, will never meet this requirement because there is no coverage under the primary policy. Thus, there is no need, the defendant argues, to consider if there is coverage under the excess policies because they do not apply.
 
 
 7
 The plaintiff responds that one cannot determine the coverage of excess policies concerning uninsured motorists by the primary policy because the insurance company can always avoid paying by expressly disclaiming such coverage in the primary policy. In support of this argument, the plaintiff cites Duriak v. Globe American Casualty Co., 502 N.E.2d 620 (Ohio 1986), in which the Supreme Court of Ohio held that the mandatory inclusion of uninsured motorist coverage in automobile insurance applied to excess liability policies, as well as primary policies. The plaintiff argues that the Duriak court held that the excess policies were in force, even if the primary policy was not. If this were not the case, Wilber argues, the decision in Duriak would have no effect.
 
 
 8
 Wilber is mistaken. The court in Duriak did not hold that the excess policies apply even if the conditions necessary to exhaust the primary policy coverage were not met. In fact, in deciding this issue, the court stated: "[T]he proviso in the [excess] policy predicating recovery upon compliance with the primary insurance coverage is effective to preclude recovery from the [excess] policy even if we insert uninsured motorist coverage into the policy as a matter of law." Id. at 623.
 
 
 9
 As to her other arguments, Wilber appears to miss the point of excess liability policies. It does not matter if she is covered under the excess policies because coverage under the excess policies, no matter the amount of potential damages, cannot make up for the lack of liability for the coverage under the primary policy. If there is no coverage under the primary policy, the excess policies never come into play. There is nothing anomalous in holding that excess policies hinge on the primary policy; to insure coverage under the excess policy, the insured must insist on coverage under the primary policy. Any anomaly in this case arises from the fact that there was an exclusion in the primary policy, but not in the excess ones. This seeming contradiction, however, is explained by the fact that, prior to Duriak, the insurance companies did not think the mandatory inclusion applied to excess policies in any event. The plaintiff, thus, in our view, has no case.
 
 
 10
 A question remains as to whether this court should go further and determine the scope of the excess policies' coverage. The court below held that, following the decision of the court in Duriak, even though there is no coverage in this particular case, it should decide the extent of coverage required by Ohio law. Id. at 622. We do not think this is necessary. It is our view that this issue should be resolved in the Ohio courts. Therefore, for the foregoing reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Ohio Revised Code Sec. 3937.18 requires that:
 (A) No automobile liability or motor vehicle liability policy imposed by law for bodily injury or death ... shall be delivered or issued for delivery in this state ... unless both of the following are provided:
 (1) Uninsured motorist coverage ...
 (2) Underinsured motorist coverage ...
 (D) For purposes of this section, a motor vehicle is uninsured if the liability insurer denies coverage or is or becomes the subject of insolvency proceedings in any jurisdiction.
 
 
 [2]
 The excess policies state: "Liability shall attach to the Company only after all underlying insurers have paid or have been held liable to pay the full amount of their liability ..."